## WALDRON *&* als. *versus* CHASE.

Where the owner of a large quantity of corn in bulk, sells a certain number of bushels therefrom and receives his pay, and the vendee takes away a part, the *property* in the part *sold*, vests in the *vendee*, although it is not measured or separated from the heap.

Such property left in charge of the vendor remains at the *risk* of the vendee.

Where the heap in which *such property* was left, was mostly destroyed by fire, the owner is not liable for any part of that saved, in an action of *assumpsit* by the vendee, without some evidence from which a promise may be implied.

ON REPORT from *Nisi Prius*, WELLS, J., presiding.

ASSUMPSIT, to recover payment for a quantity of corn sold by the defendant to the plaintiffs, but not delivered. The writ was dated Jan. 3, 1853, and the general issue pleaded.

On Dec. 1, 1851, the plaintiffs bought corn of defendant and received a bill thereof as follows: —

"Messrs. A. P. & W. H. Waldron;

Bought of D. T. Chase

500 B. Y. Corn at 69,                                         $345

63 days interest,             3 62

$348 62

Received payment by note,

D. T. Chase."

The note had been paid. The plaintiffs were millers, and it appeared in evidence that it was the custom in Portland, where the parties lived, to sell from large quantities in bulk, for cash, and allow the purchasers when millers, to take the same away from day to day, as they wished to use it. It was never measured out or set aside, unless where a balance on hand was sold and a cargo closed.

Between Dec. 1, and 7, after the purchase of the corn, the plaintiffs caused to be measured, and received 276 bushels, and have never received any more of that bill, nor was it measured or set apart from the bulk.

On the night of Dec. 7, 1851, the defendant's store with most of the corn in bulk, being from 12 to 15000 bushels, was destroyed by fire, without any fault on the part of the defendant.

About 200 bushels out of the heap was saved.

It appeared, that another customer and miller, five or six days before the store was burnt, bought of defendant 100 bushels of corn, for cash, but took away only seventy-nine bushels. The defendant presented a bill, after the fire, of only the amount delivered, which was paid.

One witness, called by plaintiffs, stated, that he was requested by one of the plaintiffs to step into defendant's store, since the fire, that something was said by plaintiff about some corn, and defendant told him he owed him nothing, and ordered him out of the shop.

It did not clearly appear whether this last conversation was before or after the commencement of this suit.

The case was submitted to the full Court for a legal decision.

*Willis & Fessenden,* for the plaintiffs, argued the following points.

1. The corn was at the risk of the seller, until divided and set apart. 2 Kent, 495, 2d ed.; *Merrill* v. *Hunnewell,* 13 Pick. 213; *Scudder* v. *Worster,* not yet reported in Mass., but found in the Advertiser of Nov. 23, 1853.

2. The facts proved, establish a demand and refusal, if any such were necessary.

3. The whole testimony contradicts the idea of a special notice, that the corn was to be at the risk of the purchaser.

4. The plaintiffs were entitled to the whole of what was saved.

*Shepley & Dana,* for the defendant.

The question here is, at whose risk is the property sold, but not delivered? We say at the risk of the vendee. Ins. 3, 24, 3; *Wing* v. *Clark,* 24 Maine, 366; 3 Johns. 173.

The vesting of the property casts the risk of accident on the vendee. *Potter* v. *Conrad,* Meigs' R. 26; *Tarling* v. *Baxter,* 6 B. & C. 362; *Bloxam* v. *Saunders,* 4 B. & C. 940; *Brown* v. *Bellows,* 4 Pick. 179.

Where it is the intention of the parties to make an absolute and complete sale, although something remains to be done to ascertain the quantity, weight or measure, the property passes. *Riddle* v. *Varnum,* 20 Pick. 280; *Macomber* v. *Parker,* 13 Pick. 175; *Hinde* v. *Whitehouse,* 7 East, 558; *Damon* v. *Osborn,* 1 Pick. 476; *Whitehouse,* v. *Frost,* 12 East, 612.

The plaintiffs are not entitled to a proportion of what was saved, for they had made no demand for the delivery of the corn. *Buck* v. *Owen,* 5 T. R. 409.

To understand the apparent conflict in the decisions, it is only necessary to go back and see how the former decision arose. That the *risk* of a thing sold pertained to the buyer, first came from the civil law, and there delivery was not necessary to determine the question of risk. That principle of the civil law has been adopted into the common law.

Waldron *v.* Chase.

The conflict arose because the statute of frauds required delivery on a contract in writing, the risk did not attach until the bargain and sale was complete.

The contract of bargain and sale is not complete so long as any thing remains to complete the sale, which is the principle on which the cases turn, and when the seller has nothing more to do the risk attaches to the vendee. The language cited from Kent, is not his language, but of an English case decided by Lord Ellenborough; but it was decided afterwards by the same Judge that on sale of a quantity of oil from a tun of oil, the risk attached to the vendee. When the property was in a state to be delivered, and the vendor had nothing more to do, the risk of the goods attached to the vendee. *Whitehouse* v. *Frost*, 12 East, 613.

Kent does not state the principle as set forth in the authorities he quotes. Where the price and quantity are fixed the sale is complete.

The case cited by the other side from a newspaper, if true, overrules many of the cases in Massachusetts, without any allusion to them.

A contract of sale may be complete although the vendee may not have an absolute right of possession. *Risk* depends on the right of *property* and not on the right of *possession*. This has been frequently overlooked and occasioned some confusion in the decisions.

SHEPLEY, C. J. — Is it contended by either counsel that the property may be in one and the risk in the other?

It is not.

*Fessenden*, in reply, said that Kent adopts the authority by him cited, and the principle is laid down, as contended for by the plaintiff, as plainly as language can make it.

SHEPLEY, C. J. — Did the property in this case pass or not?

*Fessenden.* — That is the question I was arguing. The questions often determined have been of property, rather than risk. The distinction in the two cases from East, is, that in the latter case cited, the property was in the hands

of a *bailee.* I contend the property, *not delivered,* did not *pass.* For that property the plaintiff could not maintain *replevin.*

HATHAWAY, J.—The defendant had, in his store, some fifteen thousand bushels of corn, in bulk, of which he sold to the plaintiffs five hundred bushels, Dec. 1, 1851, and received his pay. The plaintiffs were millers, and for their own convenience and without charge for storage, left the corn in the defendant's store and took, as they wanted to use it, between the first and seventh of December, two hundred and seventy-six bushels. On the seventh of December the defendant's store and most of the corn in it was destroyed by fire, and the plaintiffs bring this action to recover *payment* for the balance of the five hundred bushels. The action is by the vendees against the vendor, and one question presented is, whether or not, as between them, the property in the whole five hundred bushels passed to the vendees by the sale.

The plaintiffs contend that, although they had paid for the whole, yet they had received only two hundred and seventy-six bushels, and that, until they had actually received the whole, or it had been measured out to them and separated from the mass, what remained in the store was not legally delivered, and was at the risk of the vendor.

There is an apparent conflict of the authorities upon this subject, arising, perhaps, more from a difference of the facts in the cases, in which the question has been presented, or from a difference in the forms of actions, by which parties have sought to vindicate their rights, than from any real difference of opinion concerning the law.

In this case the contract of sale was complete. The corn was paid for, and a part of it taken by the plaintiffs, who had the right to take the residue, when convenient for them, in the ordinary course of their business. Nothing more was necessary to be done on the part of the vendor, and, both upon principle, and according to the law as adduced from

the authorities cited by counsel in the case, the property passed to the vendees, and was at their risk. 2 Black. Com. 447, 448; *Damon* v. *Osborn*, 1 Pick. 476; *Riddle* v. *Varnum*, 20 Pick. 280.

But the plaintiffs claim that, as a portion of the corn was saved from the fire, they are entitled to recover *payment* for that. This is an action of assumpsit, and the case finds no evidence of an express promise to pay the plaintiffs for the corn saved, nor does it furnish any proofs from which a promise can be implied, and a nonsuit must be entered.

SHEPLEY, C. J., and HOWARD, RICE and CUTTING, J. J., concurred.