(21 App. Div. 304.)

PEOPLE ex rel. BLOCHER v. CROWLEY et al., Board of Assessors.

(Supreme Court, Appellate Division, Fourth Department. October 15, 1897.)

RESIDENCE—PERSONAL TAX.

One who has for years spent his summers at his country house in W., where he had formerly resided, and lives the rest of the year in his house in B., regarding B. as his legal residence, voting and being assessed there, may, without any change in his manner of living, change back his residence to W. by notifying the assessors of his intention to do so, and by voting and paying taxes assessed to him as a resident of W.; so that, residence July 1st being deemed residence, for purposes of taxation, during that

year (Laws 1896, c. 908; Gen. Laws, c. 24, § 8), he cannot, though actually living in B. the following April, be taxed as a resident thereof, notwithstanding its charter provision (Laws 1891, c. 105, §§ 138–142) that its assessors shall prepare an assessment roll containing the names of all its inhabitants deemed taxable on personal estate on April 1st in each year.

Appeal from special term, Erie county.

Certiorari on the relation of John Blocher against Thomas F. Crowley and others, board of assessors of the city of Buffalo, to review an assessment of property. Writ quashed, and relator appeals. Reversed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

M. Fillmore Brown, for appellant.

George P. Keating, for respondents.

PER CURIAM. This is a proceeding, under what is known as the "Tax Law of 1896," to have declared illegal an assessment of $25,000 of personal property assessed against the relator by the board of assessors of the city of Buffalo; and the only question about which there appears to be any controversy is that which relates to the legal residence of the relator, for the purposes of taxation, on the 1st day of April, 1897, when the assessment roll in question was completed. It appears that the relator formerly resided at Williamsville, in the town of Amherst and county of Erie, in which town he owned three farms, and that in the year 1863 he removed to the city of Buffalo, where he purchased or erected a valuable house, in which he resided with his family until 1895. During this period of time he spent his summer months at his country house in Williamsville, but he regarded Buffalo as his legal residence, and he was assessed and voted in that city. In 1895, however, he conceived the idea of changing his residence to Williamsville, at which place was located the principal office of the Buffalo & Williamsville Electric Railroad, of which company he was the president and manager. He thereupon notified the board of assessors of his intention, and his assessment for personal property was omitted from the city assessment roll. From this time on, his manner of living continued as before; that is, he occupied his residence in Williamsville from the latter part of May until the middle of October each year, and his city house for the other seven months. His name, however, was placed upon the assessment roll of the town of Amherst for $25,000 of personal property, and he paid the tax upon that sum in 1895 and 1896. He likewise voted in that town at the annual election in each of those years.

It is provided by the tax law of this state that "every person shall be taxed in the tax district where he resides when the assessment for taxation is made, for all personal property owned by him," and that "the residence of a person on July first shall be deemed his residence for the purpose of assessment and taxation during that year." Laws 1896, c. 908; Gen. Laws, c. 24, § 8. The legal residence of a person rests largely in the intent of the individual, and the acts of the relator hereinbefore detailed indicate very clearly to our mind that he left Buffalo and went to Williamsville in 1895 with the intention of tak-

ing up his residence in the latter place.  The respondents at one time apparently entertained the same idea, for, upon being informed of the relator's intention in 1895, they promptly removed his name from the list of those assessable for personal property in their city, and made no effort to restore it until the present year.  We think it may be properly assumed, therefore, that upon the 1st day of July, 1896, the relator was a resident of the town of Amherst; and, if so, it must follow that that was the only town in which he could be legally assessed for personal property for the period of one year from the above date, for it is contrary to the policy of the law that the property of a citizen should be taxed more than once in a single year.  Mygatt v. Washburn, 15 N. Y. 316.  It is insisted, however, that, inasmuch as the charter of the city of Buffalo requires the board of assessors of that city to prepare an assessment roll containing the names of all the inhabitants of the city deemed taxable upon personal estate on the 1st day of April in each year, the relator was properly placed upon the last assessment roll, because he was actually residing in his city house on the 1st day of April, 1897, and that, consequently, he was an inhabitant of the city.  Laws 1891, c. 105, §§ 138–142.  It is not denied that the relator was occupying his city house at the date named, but this did not necessarily indicate that he had changed his legal residence.  As has already been shown, he resided at another place on the 1st day of July in the previous year, where he had been assessed for personal property, which, of itself, we apprehend, furnishes a complete answer to this contention.  But there is still another reason why it should not obtain, which is that the law presumes that, when a person has once acquired a residence in a tax district, such residence continues, for the purpose of taxation, until another residence shall have been acquired, and this presumption can be overcome only by affirmative and satisfactory evidence that such place of residence has been abandoned by the party assessed.  Gen. Laws, c. 24, § 9; In re Nichols, 54 N. Y. 62.  The record in this case, so far from furnishing any evidence of an intentional abandonment by the relator of the town of Amherst as his residence, tends strongly, in our opinion, to establish the very opposite of that fact.  If, then, the relator was not a resident of the city of Buffalo on the 1st day of April, 1897, his name was improperly placed upon the list of persons liable to be assessed for personal property in that city at that date, and it follows that the order appealed from should be reversed, and that the assessment complained of should be declared erroneous and illegal, and ordered to be stricken from the roll.

Order reversed, and order granted declaring the assessment and tax complained of erroneous and illegal, and requiring the respondents to strike the same from the assessment roll of the city of Buffalo.