CHARLES D. RAWSTORNE, Respondent, *v.* WILLIAM G. MAGUIRE, Appellant.

First Department, January 19, 1934.

*Kenneth E. Walser* of counsel [*Ross Kenyon* with him on the brief; *Spence, Hopkins & Walser*, attorneys], for the appellant.

*David S. Hecht* of counsel [*Leonard P. Moore* with him on the brief; *Chadbourne, Stanchfield & Levy*, attorneys], for the respondent.

TOWNLEY, J. Defendant, appellant, appears specially and moves to set aside the service of summons on the ground that he is not a resident of New York and is consequently not subject to service by substitution under section 230 of the Civil Practice Act. Section 230 authorizes an order for substituted service against a person " residing within the State." The question is whether defendant

at the time he was served was " residing " in New York within the meaning of this section.

The defendant occupied a room at the Vanderbilt Hotel in New York city, whenever he happened to be in New York, from May 7, 1932, to August 24, 1933. At first he registered from his home in Chicago. During this period he moved to Fredericksburg, Va., and registered from there. The defendant's home in Virginia consisted of a dwelling house and a large estate on Poplar road, Stafford county. The defendant lives there with his wife, daughters, mother and mother-in-law. The defendant owns no real estate or any other property in New York and he actually has no place of residence other than the Virginia home

Admittedly for a year and four months the defendant was frequently in New York. Most of the visits were from two to ten days in duration. The longest periods in 1933 that he stayed at the hotel at one time was for thirteen days in February and fifteen days in June. In 1932 he spent more time in New York. Aside from numerous short stays he was here for thirty consecutive days in June, twenty-five consecutive days in September, eighteen consecutive days in the early part of October, thirty-two consecutive days from the latter part of October to the latter part of November, and twenty-six consecutive days ending December twenty-second. The list of the visits indicates that the defendant was irregularly in and out of the city as a visitor. The room clerk of the hotel states in his affidavit that he made an arrangement with the defendant whereby the defendant could keep his room and leave his baggage there and be charged only for the time that he was at the hotel. " It was the understanding that if Mr. Maguire's room should be needed for other guests at a time when he was away the hotel could use it." It thus appears that the arrangement was for the benefit of the hotel to retain defendant's casual patronage. During the period at which it is claimed defendant was a resident of New York, there was a decision in the United States District Court, Southern District of New York, holding that on September 7, 1932, defendant was a citizen of Virginia.

The date of the summons involved is July 8, 1933. After July 4, 1933, and before the order was signed, defendant was in New York on only one occasion, the twenty-first, twenty-second and twenty-third of August. On the twenty-fourth of August defendant left the hotel, gave up his room and took his baggage with him. Any later visits in September were purely those of a transient. The order for substituted service is dated August 30, 1933. It is, therefore, clear that whatever might have been the status of the defendant during the period in which he was holding his hotel room con-

tinuously, he had changed his status completely, and so far as appears, in the utmost good faith, on August 24, 1933. Accordingly, when the plaintiff obtained the order of Special Term for substituted service, defendant was certainly not in residence in this State.

The process of any State has no extraterritorial jurisdiction over persons beyond its boundaries. To maintain an action against a resident by substituted service, the service of process by substitution must be supported upon the ground that the person is domiciled in the State, the court of which has issued the order. (*Huntley* v. *Baker*, 33 Hun, 578.) In *Leighty* v. *Tichenor* (173 App. Div. 228) a Missouri judgment secured by substituted service was held invalid by this court because the defendant was not domiciled in Missouri when served with process by substituted service under a similar statute. The court said: " It appears to us from a consideration of the statutes that the intent of the statute was to prescribe a method of service on domiciled and not merely temporary residents, and that, therefore, by the terms of the statute, as well as by the principles of the common law, the service would be ineffective if defendant was not at the time domiciled in Missouri, even though he happened to have a temporary ' place of abode ' in the State."

Since the decision in *Pennoyer* v. *Neff* (95 U. S. 714) the Supreme Court of the United States has uniformly held that process of a State may not be served upon one not a citizen of that State except within the State.

" The established general rule is that any personal judgment which a State court may render against one who did not voluntarily submit to its jurisdiction, and who is not a citizen of the State, nor served with process within its borders, no matter what the mode of service, is void, because the court had no jurisdiction over his person. *Pennoyer* v. *Neff, supra;* Freeman on Judgments, 4th ed., § 120a; Black on Judgments, 2d ed., §§ 904 and 905." (*New York Life Ins. Co.* v. *Dunlevy*, 241 U. S. 518, 522.)

It is unnecessary to discuss whether there is a difference between the term " citizenship " as used by the Supreme Court of the United States and " residence " or " domicile " as defined in the decision of this State cited above. In almost all cases it will be found that one who has a domicile in a State will also be a citizen of that State or at least eligible for citizenship.

Assuming that for most questions which might arise under section 230 of the Civil Practice Act the test of domicile will be sufficient, the following definition of " domicile " by the Supreme Court of the United States is pertinent: " Domicile has been thus defined: ' A residence at a particular place accompanied with positive or presumptive proof of an intention to remain there for an unlimited

time.' * * * By the term *domicile*, in its ordinary acceptation, is meant the place where a person lives and has his home. * * * Where a change of domicile is alleged the burden of proving it rests upon the person making the allegation. To constitute the new domicile two things are indispensable: *First*, residence in the new locality; and, *second*, the intention to remain there. The change cannot be made except *facto et animo*. Both are alike necessary. Either without the other is insufficient." (*Mitchell* v. *United States*, 88 U. S. [21 Wall.] 350.)

The facts of the case before us show no evidence whatever of an intent to become domiciled in this State within the meaning of this definition.

The order should be reversed, with twenty dollars costs and disbursements, and the motion granted, with ten dollars costs.

FINCH, P. J., and O'MALLEY, J., concur; MARTIN and GLENNON, JJ., dissent and vote for affirmance.

MARTIN, J. (dissenting). The validity of service of process by substituted service is here challenged. The facts are not in dispute. The defendant, a citizen of Virginia, registered at a New York hotel and sojourned there substantially all of the time during a period of one year and four months preceding the order for substituted service. The question for determination is whether the defendant is subject to such service. To decide that question we must determine whether the defendant was residing within this State as contemplated by section 230 of the Civil Practice Act.

The affidavit of Walter A. Henkel, the head room clerk of the Hotel Vanderbilt, submitted by defendant, shows that the defendant actually occupied his quarters in the hotel 309 days during the period from May 4, 1932, to September 27, 1933, and that during this period he continued to live in the hotel and remain in the city of New York, except for short periods of time. The room clerk and other employees of the hotel knew the defendant as a resident of the hotel and so stated in answer to inquiries.

The defendant contends that a " person residing within the State," as provided in section 230 of the Civil Practice Act, means a " citizen " domiciled within the State and that substituted service cannot constitutionally be made upon this defendant, a citizen of the United States, domiciled in another State, even though he resides during an extended period at a hotel in this State. The defendant also urges that, whatever transitory residence he might have acquired here, by his stay at the hotel, he had left the State and given up his residence prior to the date of the order for substituted service and of the attempted service thereunder.

The plaintiff says that defendant's citizenship and domicile are immaterial; that his sojourns and residence in this State covering the greater part of sixteen months made him subject to substituted service as a " person residing within the State."

The defendant does not question the sufficiency of the papers upon which the order was granted, but attempts to establish by new proof that he was not " residing within the State " of New York, within the language of section 230 of the Civil Practice Act, when the order for substituted service was obtained.

The defendant does not deny that he received timely notice of the commencement of this action. He had actual notice of the substituted service. He occupied his quarters in the hotel before and after the service had been made in the manner directed by the court and entered his special appearance in that action in due time.

The present section of the Civil Practice Act was taken from section 435 of the Code of Civil Procedure. That section was construed and held constitutional in *Continental National Bank* v. *Thurber* (74 Hun, 632; affd., 143 N. Y. 648). The court there said: " Acquiring jurisdiction of resident defendants by constructive service of process is a proceeding according to the course of the common law, and is due process of law. This kind of service was not unknown to the common law, but was an authorized mode by which the English courts of law and of equity from the earliest times acquired jurisdiction of resident defendants."

In *Schibsby* v. *Westenholz* ([L. R.] 6 Q. B. [1870–1871] 155) we find the law set forth as follows: " Now on this we think some things are quite clear on principle. If the defendants had been at the time of the judgment subjects of the country whose judgment is sought to be enforced against them, we think that its laws would have bound them. Again if the defendants had been at the time when the suit was commenced resident in the country, so as to have the benefit of its laws protecting them, or, as it is sometimes expressed, owing temporary allegiance to that country, we think that its laws would have bound them."

The fact that this defendant may have been legally domiciled in another State, or that he may have been a resident of that State, does not preclude him from being a resident of New York. The error persisted in by defendant is in insisting that a defendant must be domiciled in New York State before jurisdiction over him may be obtained by substituted service. While it may be possible to have but one legal domicile, it is possible to have two or more residences.

In *Bischoff* v. *Bischoff* (88 App. Div. 126) the question of residence was before the court. " The question for determination on this motion is not whether the plaintiff has a residence in New York

county, but whether he has a residence in Westchester county. A person may have two or more residences as distinguished from a domicile, and if the plaintiff at the time of the commencement of this action had either an actual residence or a domicile in Westchester county, the action is properly brought in that county, although the plaintiff may also have had a residence elsewhere. (*Cincinnati, Hamilton & Dayton R. R. Co.* v. *Ives*, 21 N. Y. St. Repr. 67; *Lyon* v. *Lyon*, 30 Hun, 455.)"

In *Douglas* v. *Mayor, etc., of New York* (2 Duer, 110) the court pointed out the difference between residence and domicile: "It may also be true, as was contended, that Flushing was the plaintiff's true and only domicil, although we should have great difficulty in so holding were it necessary to determine the question; but we are unable to see that this fact, if proved or conceded, has any bearing upon the argument. In most cases, when a person has two residences, one of them is also his domicil; but we apprehend that his residences, in the legal and statutory sense of the term, are just as distinct as if both, as might be the case (*In re Thompson*, 1 Wend. 45), were separated from his domicil."

In section 230 of the Civil Practice Act the Legislature referred to a natural person residing in this State instead of solely to a natural person domiciled within the State. Plainly the intent is not to confine the application of the statute to persons domiciled in New York. Evidently the intent is to have section 230 of the Civil Practice Act apply to all residents who may, within constitutional limitations, be affected. In that category we find those who voluntarily subject themselves to the law of the State, seek its protection, and reasonably this defendant must be so classed, in the light of the evidence furnished by the affidavits. He lived here almost constantly for more than a year, enjoying the protection of our laws, until it served his purpose to try to escape their effect. He should be held to have rendered himself subject to the provisions of the statute known as section 230 of the Civil Practice Act.

In several of the cases cited by appellant the court was considering an entirely different subject. The service in those cases was defective in that it did not comply with the requirements of the statute.

The summons in this case is dated July 8, 1933, at which time the defendant lived in the hotel. From that time the plaintiff apparently was attempting to serve the defendant at the hotel where he was living, and where he had been living for over a year and where he thereafter remained for several weeks.

It is argued that the defendant checked out of the hotel about the time of the substituted service, but it is admitted that he returned

shortly thereafter and continued to live at the same hotel. No weight should be given to the fact that the defendant, after having lived at the hotel for over a year, checked out for a few weeks, to avoid service, when he knew that the process servers were diligently endeavoring to serve him. He avoided personal service although almost daily at the hotel. Under the circumstances here disclosed he should not be permitted to avoid substituted service.

The order should be affirmed, with twenty dollars costs and disbursements.

GLENNON, J., concurs.

Order reversed, with twenty dollars costs and disbursements, and motion granted, with ten dollars costs.